Ballou *v.* Cunningham.

———•●•———

## BALLOU *vs.* CUNNINGHAM.

Where a chattel mortgage contained a power to the mortgagee, in case of default in payment, to take possession of the property, and sell the same, and after deducting all expenses, to apply the proceeds in payment of the debt; and in case he should at any time deem himself unsafe, that he might take possession of the property and sell the same at *public* or *private* sale, before the day of payment; *Held* that on default in payment at the day, the mortgagee might sell the property at *private* sale, without notice to the mortgagor; and that if the sale was fair and *bona fide*, the right of the mortgagor to redeem was foreclosed.

*Held, also*, that under such circumstances, the mortgagee did not, by selling the property at private sale, render himself liable to account to the mortgagor for its full value; nor could the latter be allowed to prove the value of the property, for the purpose of recovering the difference between that sum and the amount realized from the sale. MULLIN, P. J., dissented.

APPEAL by the plaintiff from a judgment entered at a special term, on the verdict of a jury, in his favor, for $47, a smaller amount than was claimed by him.

The action was brought by the plaintiff, the mortgagee named in a chattel mortgage executed by the defendant, to recover a balance claimed to be still due thereon. The mortgage was given to secure the payment of $200, with interest, stated to be borrowed money. It was dated November 1, 1867, and contained the following proviso: "Provided always, and this mortgage is on the express condition, that if the said Cunningham shall pay to the said Ballou the sum of two hundred dollars ($200) with interest thereon, as follows, viz: three months after date,

which the said Wm. Cunningham hereby agrees to pay, then this transfer to be void and of no effect; but in case of non-payment of the said debt and interest at the time above mentioned, the said Ballou shall have full power to enter upon the premises of the said party of the first part, or any other place or places where the goods and chattels aforesaid may be, to take possession of said property to sell the same, and the avails (after deducting all expenses of the sale and keeping of the said property,) to apply in payment of the above debt; and in case the said Ballou shall at any time deem himself unsafe, it shall be lawful for him to take possession of said property and to sell the same at public or private sale previous to the time above mentioned for the payment of said debt, applying the proceeds as aforesaid, after deducting all expenses of the sale and keeping of the said property. If from any cause said property shall fail to satisfy said debt, interest, costs and charges, I covenant and agree to pay the deficiency."

The other material facts are stated in the opinion of the court.

*Jones & Ballou*, for the appellant.

I. The mortgage in this case contains an express promise to pay the amount secured; hence this action will lie. (*Culver* v. *Sisson*, 3 *Comst.* 264.)

II. The mortgage provides that in case default is made in payment, the mortgagee may take possession of the mortgaged property and sell the same; and in a subsequent clause of the same sentence, that in case the mortgagee shall at any time deem himself unsafe, he may take possession of the mortgaged property and sell the same at *public* or *private* sale. This language, by construction and upon authority, authorizes a public or private sale in either case. (*Chamberlain* v. *Martin*, 43 *Barb.* 607.) 1. The mortgage provides for a sale in case of default in payment, but does not specify whether a public or private sale, leav-

ing the manner of sale doubtful or ambiguous; hence the ambiguity must be taken most strongly against the mortgagor, whose language is used. *"Verba chartarum fortius accipiunter contra proferentum."* (*Breasted* v. *Farmers' Loan and Trust Co.*, 8 *N. Y.* 305.) 2. By the acknowledged rule of construction, *noscitur a sociis*, the first member of the sentence, if there be any doubt in its meaning, should be controlled by the other members which are entirely unequivocal. (*Broom's Leg. Maxims*, 450, *and cases cited.* 8 *N. Y.* 304.) 3. The word "sale," in the first clause of the sentence, being unqualified, but being coupled with the words "public or private," in the second clause of the same sentence, shows that it is used in the same sense in both places. *" Copulatio verborum indicat acceptationem in eodem sensu."* (*Broom's Legal Maxims*, 450.)

III. The property mentioned in the mortgage having been regularly sold, under a power contained in the mortgage, and credited upon the mortgage debt, and the sale being free from fraud or collusion, evidence as to the value of the mortgaged property is inadmissible, and the balance may be collected of the mortgagor by action. (*Olcott* v. *Tioga R. R. Co.*, 40 *Barb.* 180; 27 *N. Y.* 546.)

*J. T. Spriggs* and *A. Coburn*, for the respondent.

I. The answer of the defendant sets up an equitable defense, which the court below excluded, except as to the cow. This was error; but it was an error in favor of the plaintiff, and affords no grounds for a new trial on this appeal. (*Western Bank* v. *Sherwood*, 29 *Barb.* 383. *Pratt* v. *Stiles*, 17 *How. Pr.* 211, 221. *Archer* v. *Cole*, 22 *id.* 411. *Hinman* v. *Judson*, 13 *Barb.* 629.) 1. The offer was, in substance, to show that the property was amply sufficient, if properly sold, to pay the debt and expenses. 2. The hay mortgaged was ten tons. Three tons of it sold for $51, or $17 per ton. What became of the remaining seven tons? There is no pretense that the defendant used

or sold any of it. 3. If this hay remained unsold, as we insist it did, there was at least $100 worth of hay which should have been applied; and if applied, the mortgage was paid in full. 4. Instead of this, the case shows, if it shows any thing about the balance of the hay, that the hay, the black mare, the double harness and the bob-sleighs were sold for $60.87. 5. The sale was without notice to the mortgagor, and did not foreclose his equity of redemption. And having the right in equity to redeem, he had the right to insist that upon a fair sale and application of the property, the mortgage debt was paid. (*Hart* v. *Ten Eyck*, 2 *John. Ch.* 62, 100, *per Kent, Ch. Chamberlain* v. *Martin*, 43 *Barb.* 607, 609. *Manning* v. *Monaghan*, 23 *N. Y.* 549, 555, *per Comstock, J.*) 6. But this was an error in favor of the plaintiff, and he cannot take advantage of it on this appeal.

II. The appeal in this case is from the judgment, and does not bring up for review the motion for a new trial on the judge's minutes. (*Code*, § 348, *and notes. Coyle* v. *City of Brooklyn*, 53 *Barb.* 41, *and cases cited.*) 1. On appeal from the judgment, it cannot be urged that the verdict is against the `weight of evidence. (*Anthony* v. *Smith*, 4 *Bosw.* 503. *Hoxie* v. *Greene*, 37 *How. Pr.* 97.) 2. Nor can the finding of the jury be reviewed on this appeal, except so far as the question of law raised at the trial, and the exception taken, may render it necessary. (*Marquart* v. *LaFarge*, 5 *Duer*, 559. *Stettiner* v. *Granite Ins. Co., Id.* 594.) 3. Such an appeal only brings up questions of law. (*Bulkeley* v. *Kettletas*, 4 *Sandf.* 450. *Benedict* v. *N. Y. and Harlem R. R. Co.*, 8 *N. Y. Leg. Obs.* 168.)

III. The ruling at the circuit, as to the value of the cow, was correct, both upon the law and the facts, and the judgment should be affirmed. (*Archer* v. *Cole*, 22 *How. Pr.* 411. *Pratt* v. *Stiles*, 17 *id.* 211, 221, *and cases cited. Chamberlain* v. *Martin*, 43 *Barb.* 607. *Manning* v. *Monaghan*, 23 *N. Y.* 549, 550. *Craig* v. *Tappin*, 2 *Sandf. Ch.* 78,

Ballou *v.* Cunningham.

90, 91. *Stoddard* v. *Denison*, 38 *How. Pr.* 296, 299. *Case* v. *Boughton*, 11 *Wend.* 106. *Charter* v. *Stevens*, 3 *Denio*, 33.) 1. The cow was sold at private sale, without notice to the defendant, and at much less than her fair value. 2. If the plaintiff had kept the cow, as he might have done, there could be no question that he must allow her full value. (*Craig* v. *Tappin*, *supra.*) 3. The plaintiff's own witness, Jones, testified that she was worth at that time of year, $65. The defendant testified she was worth $100, and gave his reasons for it. 4. The jury had the whole testimony before them, and settled the question of her value, as a question of fact. 5. We have the right to say, and we insist, upon the facts proved, that the sale was neither fair nor *bona fide*. (*Chamberlain* v. *Martin*, 43 *Barb.* 607. *Manning* v. *Monaghan*, 23 *N. Y.* 549, 550.) (*a.*) It was without notice to the mortgagor. (*b.*) The wagon was sold for a mere nominal amount, and far less than its value for the iron upon it. (*c.*) As to the seven tons of hay mortgaged, no account is given. (*d.*) The horse, harness and bob-sleighs were sold at Boonville, while the wagon and hay were sold at the defandant's farm. Was the property sold at Boonville present and subject to inspection? The case does not show that it was, and we insist that it was not. (*e.*) The defendant's farm was near Forestport, and several miles from Boonville. Two of the notices were posted at Boonville, and the other at Forestport, in the town of Remsen, while the mortgagor was in Utica, thirty miles from either place. (2 *Stat. at Large, p.* 269, § 148.) Upon these facts, it is submitted that the sale neither was, nor was intended to be, a fair, *bona fide* sale; that advantage was taken of the defendant's absence, to sell the property without his knowledge, and for much less than its fair market value. 6. The hay remaining unsold and unaccounted for, was properly taken into account in adjusting the amount of damages. The amount mortgaged was ten tons, and three tons of it

sold for $17 per ton. What became of the balance?
(*Manning* v. *Monaghan, supra.*)  7. The objection was that
evidence of value was not admissible under the pleadings
and upon the facts proven. The answer alleged, in sub-
stance, and as an equitable defense, that the sale was not
a fair one, and that the property, if fairly sold, was ample
to pay the debt. The proof merely showed a sale of part
of it, and a portion of it, to wit, the cow and the wagon,
for much less than their value. Hence we submit that
the objection was unfounded in fact. Suppose we had
tendered a sum of money and sought to redeem the prop-
erty, could the plaintiff hold the property without regard
to its value? Clearly not. He is only entitled, in equity,
to the money due upon his mortgage. So, too, if the prop-
erty is ample to pay the mortgage debt, the mortgagee is
bound in equity to apply it fairly and honestly in satifac-
tion of his claim. And all we sought to show was that
he had not thus applied it, but had sold it unfairly, and
thus sacrificed a large portion of its value; that in equity
the debt was paid. (*Stoddard* v. *Denison*, 38 *How. Pr.*
296. *Manning* v. *Monaghan*, 23 *N. Y.* 549, 550. *Case* v.
*Boughton*, 11 *Wend.* 106. *Charter* v. *Stevens*, 3 *Denio*, 33.)

IV. Upon the facts proved, the jury were fully war-
ranted in finding, as they did, that only part of the plain-
tiff's claim was unpaid; and it was his misfortune that
the balance found to be due was less than $50. The only
question submitted to the jury was the fair market value
of the cow, and the testimony of Jones, the plaintiff's
witness, showed her to be worth $25 more than he sold
her for, thus reducing the balance below $50.

The verdict and judgment were right upon the law,
and should not be disturbed.

JOHNSON, J. The action was to recover the balance re-
maining due upon a chattel mortgage, after a sale of the
mortgaged property, and the application of the proceeds.

The mortgage was to secure the payment of the $200, three months from date, which sum the mortgagor agreed then to pay. He further stipulated and agreed that in case he should make default, the mortgagee might take possession of the property, and sell the same, either at public or private sale, and after deducting all expenses, apply the proceeds. The mortgage further provides that "if from any cause said property shall fail to satisfy said debt, interest, costs and charges, I covenant and agree to pay the deficiency." The debt was not paid at the day specified, and the plaintiff took possession of the property by virtue of the mortgage, by his agent, one Jones, who was a constable. Jones advertised and sold the property at public auction, except one cow, which the plaintiff sold at private sale the day before the auction, for $40.

The defendant claimed that by taking the property upon the mortgage, and selling it, the debt was paid, if he could prove, as he proposed to do, that the property was really worth much more than the amount of the debt. This evidence was objected to by the plaintiff's counsel.

The judge ruled that inasmuch as the plaintiff had sold the cow at private sale he must account for her full value, and that the defendant might prove the value of the cow. To this ruling the plaintiff's counsel excepted. This exception presents the only question in the case.

I think this ruling was clearly erroneous. The ruling is placed simply upon the ground that the sale was private. By the terms of the mortgage, the plaintiff had the same right to make a private sale that he had to make a public sale, and there is no reason why he should be held to account for the value of the property sold in that way, more than for that sold in the other. Each sale was under the power contained in the instrument. The defendant had clothed the plaintiff with this power, and made him his agent to sell his remaining interest, which was a mere equity of redemption. The title of the plaintiff had be-

come absolute by the default of the defendant in making payment. All that was then left to the defendant was the right to redeem, by paying the debt before the property should be sold.

By the sale, in the mode prescribed in the mortgage, the right of redemption was cut off, and the defendant had expressly agreed to pay any deficiency after the proceeds of the sale, (less costs and expenses,) should be applied. The parties agreed that in case of default, which might render a resort to the property necessary in order to give the plaintiff his money, the property might be sold by the mortgagee, and its value ascertained in that way, and applied in payment of the debt.

It is now said that the defendant should have had notice of the private sale, before it was made, and that as he had no notice he is not bound by it, but may have the full value of the cow applied in payment, contrary to his express agreement. No such question was raised or suggested at the circuit, and the ruling was not placed upon any such ground. But if it had been, the position is clearly untenable. The nature of the power exercised must be gathered from the terms of the instrument, and that certainly does not require or contemplate any notice to the defendant in case of a private sale. The plaintiff was acting as the defendant's agent or attorney, with full power to sell and convey all the right the defendant might have, and it would be an unheard of thing to require the agent or attorney to give his principal notice, before he could sell and conclude such principal. Had notice been given, could the defendant, by objecting, have prevented the plaintiff selling in that way? Clearly not. It might just as well be said that he could prevent a public sale in that way. But the precise question has been decided by the court, in the eighth judicial district, which is authority in this court. (*Chamberlain* v. *Martin*, 43 *Barb.* 607.) It was there expressly held that a private sale, under such a

power in a mortgage, without notice to the mortgagor, was valid, and concluded the mortgagor, if made in good faith. No case can be found to the contrary, where the sale has been made in good faith, under a power and authority like this. There is no room for pretending here that the plaintiff did not act in good faith, in selling the cow at private sale. He testifies that he sold her for all he could get, and that he intended to sell her for all she was worth; and there is no testimony or circumstance leading to a contrary conclusion. No one testifies that he would have given more for the cow, or that she could have been sold for more at that season of the year. No one can suppose that the cow would have sold for a better price at public sale; much less will the law infer it, without some proof. Indeed it would appear, judging from results, that the cow was in fact sold more advantageously to the defendant's interests than the property sold at public auction. The net proceeds of all the other property sold at the public sale were only about $90. The expenses of the public sale and keeping the property, amounted to $23.75. This shows how expensive it was to keep animals on hand at that season of the year, and the importance of their being sold at the earliest practicable moment. But these considerations bear only upon the question of good faith, which was not raised upon the trial. The ruling there was, that upon the mere fact of selling at private sale, the law gave the defendant the right to have applied upon his debt all he could prove his property to be worth. This surely cannot be the law in a case like this. The parties have agreed that in case the debtor fails to pay as he has promised, the property may be converted into money by the creditor, either at public or private sale as he may elect, and the net proceeds only applied in extinguishment of the debt. Surely the creditor who has pursued the remedy secured to him by his agreement, cannot, upon any just principle, be made liable beyond the amount

realized, unless he has violated the letter or spirit of the agreement. Under the ruling at the circuit, the jury allowed the defendant, for his cow, $36 more than the plaintiff had realized. This is certainly a novel contrivance for the payment of debts. The parties have agreed what shall be applied, in case the plaintiff is driven to a sale of the property to get back his money loaned; but the court and jury undertake to make payment and satisfaction upon a basis altogether different from the agreement; to make, in fact, a new agreement. The ruling must have proceeded upon the ground that the plaintiff had no right to sell except at public sale, and having sold at private sale, contrary to the agreement, he was to be charged, and the defendant credited, upon the same principle that would have been applied had the plaintiff kept the cow himself, instead of selling her and converting her into money. This was clearly errroneous. There is, indeed, no ground upon which this ruling can be sustained, without proof that the plaintiff, in making the private sale, acted in bad faith, and might, had he acted fairly and honestly, or with proper care and diligence, have obtained a better price.

The judgment should therefore be reversed, and a new trial ordered, with costs to abide the event.

TALCOTT, J., concurred.

MULLIN, P. J., dissented, on the ground that when a mortgagee sells at private sale, without notice, he must allow to the mortgagor what the property thus sold is reasonably worth.

New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, February 6, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]